The next matter on our calendar is United States v. Jonathan Guerrero. May it please the Court, I represent Jonathan Guerrero on his appeal from supervised release violation and two-year sentence imposed. The issue on appeal is the District Court's reliance on hearsay without any showing of cause to find that Mr. Guerrero committed second-degree robbery, the grating... This is Judge Winter. I'm not sure the District Court relied on hearsay. The District Court seems to be saying, I viewed the film and I'm not left with any doubt. Your Honor, that is the government's contention, but the record shows otherwise. At appendix page 60, the Court made, 57, excuse me, the Court specifically explicitly relied on the hearsay to find the second-degree robbery. It is true that later on page 60, A60, the Court relied on the video itself and said it needed nothing else to identify Mr. Guerrero as one of the assailants. There were two crimes charged. One was assault and one was robbery. Only the robbery was a grade A violation and triggered the two-year sentence. The video doesn't show the taking of the wallet and the phone. No, not in itself. The Court, to find the robbery, the Court relied on both the hearsay and the video, which it found was consistent with the hearsay statement. But the video shows the bag out of the frame and then back in the frame, but it doesn't show the taking. Is that your argument? It doesn't show the taking out of the bag. Then you have to rely on the testimony of the officer, and that was hearsay. And that was hearsay, and there was no cause whatsoever, like no reason. The government offered no reason whatsoever to rely on hearsay. The defense specifically objected to the hearsay on this ground, and the case law is clear. It's absolutely settled that there has to be a justification for not producing the witness. It's not that it's not allowed, but you have to put the good cause for allowing it on the record before you rely on it. Is that your argument? That's exactly right. And there was no good cause ever, anywhere, offered by the government. You don't doubt that they could come up with good cause. I do doubt it. If they didn't, why didn't they? They were given the opportunity. There were two separate sessions, and this was briefed. But the court just ruled incorrectly that hearsay was just admissible. What about bringing in the victim? They never attended? No, they did not bring in the victim, and the question is why. One of the issues might be that he really couldn't testify that there was a robbery. We don't know. We don't know. He said his wallet and his phone was taken. Well, according to the hearsay statement. Right. And it's total hearsay, and so the only question is whether it's harmless. I mean, it's clear legal error, and it's not harmless because if you look at the video on its own, it does not show that a robbery was taking place. We don't know from the video what was really going on here. If anything, it looks like maybe they knew the victim and were attacking him for some other reason, that they had a beef with him. Because there were four guys after two of them left, two stayed and appeared to talk to him, and then gave him his backpack back from the ground. And then later, very shortly later, there was another assault of Mr. Morularia, where there was no robbery. It wasn't like they were out committing robberies. Harmless error, is it, counsel? The difference between the two offenses has very different sentencing guidelines, don't they? Yes, it's six to 12 for assault three, which the court found, and it's 24 to 30 with a statutory cap of 24 for the robbery. And she sentenced this defendant to 24? To 24, exactly. Twice what she could have without the hearsay. Exactly, what she could have to impose a guideline sentence, exactly. If she stayed within the guidelines. She also could have gone outside of the guidelines, but didn't do that. Yes, exactly, she could have, but she didn't. Just so I understand your argument, do you agree that the film shows them beating the two people? Yes, we do not dispute the assault. Do you agree that the people reached in their pockets and gave something? No, we dispute that that is clear from the video. The video shows one of the assailants doing something with his hands when Mr. Gonzalez was on the ground. He could have been taking something, or he could have been hitting Mr. Gonzalez, or he could have been picking something up that he dropped. We simply don't know, it's not clear enough, and that's why the court had to rely on the hearsay statements. If the court could have said the same as she did with the identification issue, I rely totally on the video, the court would have done that. Because this hearsay issue was disputed. The court had to rely on the hearsay statements to find a robbery. If you just look at that video and put those hearsay statements completely out of your mind, you can't tell what's going on. In fact, some of the circumstances suggest that it's really a kind of dispute that they're having, rather than a robbery. The fact that two people hung around later, talked to the victim, picked up his backpack, gave it back to him. We really can't tell what's going on here. The court seems to have interpreted them as taking things out of his bag. Well, the court did, but that was because the court's finding was bolstered by the hearsay. The court had the hearsay statements. The court says it's evident from the video. But it had to rely, it all- The court said it is evident from the video that they took things out of his bag. The court did, but the court also relied on the hearsay statements. So it looks like from its reliance on both, that it needed both. And that it would not have, because if it had relied only on the video, it probably would have said so, just as it did with respect to the identification of Mr. Guerrero. The video doesn't show anything being taken from the bag. It shows the bag in one frame, and then in another frame, being given back. Right. It doesn't show anything being taken out. It doesn't, exactly, it doesn't. The only part of the- Very easy to see, I watched both videos. Right. But it still doesn't show anything, it doesn't show the bag being used, being robbed. No, it doesn't. And I believe the government is relying on the part of the video where one of the assailants, not Mr. Guerrero, is doing something like this with his hands. But we don't know what he's doing unless we already have in our mind that items were taken. Without that hearsay, you can't tell just exactly what's going on from the video. Thank you. You have reserved two minutes for rebuttal. Thank you from the government. Good morning. Good morning, Your Honors. My name is Christy Greenberg, and I represent the United States. Your Honors, the district court did properly admit the hearsay from Officer Cruz that Mr. Guerrero took Mr. Gonzalez's property. This law was set out very clearly in the government's submission, post-hearing submission, and the court made a finding that essentially that evidence was reliable, and it was corroborated based on what the court saw in the video. All right, so I saw the same video since it was supplied, and if the court said it saw the items being taken from the bag, the court is wrong, because I watched the video and did not see that. Did I make a mistake? I mean, the court said specifically when asked, and this is on Appendix 50, defense counsel stated at no point is it clear on the video that any items are actually taken. The court responded, on the contrary, it is quite clear that items are taken. It is quite clear from watching the video that your client may not have received the items in hand, but he was working with two other people, he had a crew. She also states at Appendix 57 through 58 that they grabbed a bag, they took items out of it, it was evident from the video. It's not on the video. That is the finding of the court. With all due respect to the district court, saying it doesn't make it so. It's not on the video, is it, counsel? On the video, you can see them grabbing a bag. You see them taking items out of the bag? You can see them taking items out of a bag. You can see them grabbing a bag and taking it. On the video? From the video, you can see them taking the bag away from . . . Right, and then you see it coming back later on, but are you telling me that the video shows items being taken from the bag? I mean, there are . . . Did you see that? I would say the district court made a very clear finding. I know what the district court said, but you've seen the video too. Did you see items being taken from the bag? You can certainly see rummaging around the bag. Yes or no? Did you see items being taken from the bag? I think there is a consistent finding with the court's finding that that is what occurred. Just because the court made that finding doesn't make it true if it's not on the video. Even if there weren't items taken from the bag, taking the bag itself is consistent with a robbery. They took the bag from . . . They gave it back in the same video. Right, and then you also have the lineup, which was uncontested hearsay, where the victim identified Mr. Guerrero and stated that he identified him from the robbery. The district court, all she had to do was say, for good cause, because the video is fuzzy or the video doesn't pick up every last moment of this encounter, I find good cause to rely on the hearsay of the police officer. But that wasn't done, was it? She did not . . . Was it done? She didn't explicitly state the words good cause. So the answer is no, it was not done, correct? Well, she didn't make an explicit finding, but there was ample evidence in the record . . . That's what I'm asking you. Counsel, this is yes or no. Was there a finding made that good cause required the acceptance of the hearsay? What I would say is that while that explicit balancing analysis was not in the record, the record as a whole supports good cause. And I would say even if . . . We're talking about the record as a whole. What's in the record as a whole that we haven't been discussing here? You can't just say the record as a whole. We talked about the film, which does not show items being taken from the bag. I watched it very closely. Even . . . Because I wanted to make sure that the judge's findings were correct. That's my job. What I would say is even if the bag was given back, the video clearly shows the bag being taken. And that, coupled with the other evidence that she relied on from the video, where they are kicking, they are approaching him with a cane, they're beating him, it was evident, and she found, that the items were not taken voluntarily. Counsel, this was an easy thing to do, and it wasn't done. Isn't that correct? Again, I think that what she said is that her convictions rely on her observations without the need for reinforcement from any of the victims. She watched the video more than once. She relied on the hearsay evidence given. Why wasn't the victim brought in? Do you have any idea? Well, Your Honor, this is not in the record as to why we didn't call the victim to read the justification for not providing the victim. Not in the record. That said, there were representations from defense counsel that they were not going to contest the evidence. And so, based on that, we provided the officer and not the victim. I see. But again, what I would say is that the court made very clear that the convictions, and this is from Appendix 60, the convictions rely on my observation without the need for reinforcement from anything from the victims. It was very clear that she was not relying on the hearsay, that she was relying on what she saw from the videos. Okay. Well, then she must have seen things that I, in good conscience, did not see. Well, she saw the taking of the bag, and she saw the taking of the bag by force. And that alone would support. And then the giving back of the bag is in the film, isn't it, in the last few frames? Even if you're taking back the bag, it's still a taking. It's still a forcible taking of property. And again, they did this by force. So I think if there was any error, the error here was plainly harmless. I would also note that the evidence, again, was extremely reliable, given that it was not just bolstered by the statement at issue. It was bolstered by a lineup identification that was not contested. And the district court says the convictions rely on my observation and without the need of reinforcement from anything from the victims. Isn't that during a discussion of the assault on Lorea Morrow? Who, unlike Gonzalez, did not identify Guerrero in a lineup? Isn't that correct? Well, it's after. It's basically she is summing up. She mentions Lorea Morrow, but she also follows that, and that is relating to the identification. But then she follows that her convictions, plural, rely on an observation. She's not talking about identification there. She's talking about her convictions. It comes up in a discussion of the assault on Lorea Morrow. Isn't that correct, counsel? I mean, you've read that, and that's where it comes up, correct? It comes up in that discussion. But again, at that point, she is following up. What she follows is saying the defendant is guilty of all four specifications. She's, at that point, summing up the evidence. The piece where she mentions her convictions does not specify specifically the identification or the assault. It's convictions, plural, without the need for reinforcement from anything. Did you represent the government at this hearing? Excuse me? Did you represent the government at this hearing? I did. So you know that even in a revocation hearing, a hearsay is allowed but a good cause explanation has to be put on the record, correct? Yes, Your Honor. We put that in our submission. Did you write behind the judge of that? It was in the government's submission, which is in the record. We cited the law, and we cited why the hearsay evidence here was highly reliable, because it was supported by the video. It was supported by the lineup that was uncontested. It was supported by the officer's observations of the victim. It was supported by also the detailed statements that the officer received from the victim. So all of those things, the totality of those circumstances, led to the high reliability here of this hearsay evidence. Okay. Unless the Court has any other questions, I have nothing further. Thank you. Your Honor, I'd first like to respond to this first I've heard of it agreement that the hearing would not be contested. Okay, that is belied by the record. Perhaps, and I know nothing about it because I wasn't the lawyer below, I've never heard anything about an agreement. Perhaps there was an agreement that the video would not be contested, but the hearsay was certainly contested. There were two sessions of this VOSR. The first was the hearing with the live witness, the police officer, and the hearsay, and it was objected to, it was specifically objected to at the hearing. Before the next one, which was on for findings, the defense counsel specifically wrote a letter contesting the evidence and specifically contesting the hearsay based on no showing of good cause whatsoever. It could have been corrected at the second hearing. It could have, exactly. If the government thought that there was some agreement about not contesting the hearsay, it certainly was on notice that there was no such agreement. The defense contested that hearsay. So the government, for reasons that remain mysterious, offered no reason, still offers no reason here. The kinds of reasons that qualify as good cause are in the cases, a domestic abuse victim who decides not to testify against her husband but has been interviewed six times and is highly corroborated. A witness who's been intimidated by the defendant. Nothing like that was offered here. Or an undercover agent. They don't want his cover to be blown. So there was nothing here, and still there's nothing. Still there's no reason. But you don't doubt that the government could have found good cause. I do doubt it. I do doubt it. Why wouldn't they have? And it's not so easy. You can't just come up with anything. There has to be a real reason. Second, on the government's argument that somehow the discussion at Appendix 60, which is clearly about the assault specifications, starts on 59. The judge has already found the robbery on A57. Started at the bottom of 59. Specifications 5 and 6, I believe, relate to the second incident. It's talking about the second incident. It has already talked about the first incident, and then it gets to the issue of Mr. Larea did not identify Mr. Guerrero in the lineup. That's the issue that's being discussed. As I said, after my first viewing, there is no question in my mind that the person on these videotapes was Mr. Guerrero. Absolutely no question at all. This is all about the identity of Mr. Guerrero. And the fact that she used the word convictions, there were two assault convictions. There were two assault convictions. One against Mr. Guerrero and one against Mr. Larry Amora. So it's clear that she's done with the robbery and she's talking about the assault. She's not summing up. She's not saying, okay, with respect to every one of these, including the robbery, she does not say that. And that could have been said. She didn't say it. She, in fact, explicitly relied on the hearsay to find the robbery, which was the highest count for which he was sentenced. Thank you. Thank you. Thank you.